# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | Case No. 2:20-cr-17 |
| | ) | |
| | ) | |
| **SAMUEL SILVA** | ) | |

## MOTION TO CONTINUE BASED UPON REASONABLE ACCOMMODATION

Samuel Silva is currently scheduled for an in-person Initial Hearing/Arraignment on February 22, 2021. Counsel for Mr. Silva request a continuance until after April 1, 2021. Mr. Silva has the right to have two attorneys at all substantive hearings. Despite one of Mr. Silva's counsel's best efforts, she has been unable to schedule an appointment to receive a COVID-19 vaccine until February 25, 2021. Without established immunity to COVID-19, one of Mr. Silva's attorneys is currently disabled. This disability will be cured upon a second COVID-19 vaccine, likely to be administered by March 18, 2021, and the requisite two-week timeframe for the vaccine to be effective. Based upon criteria as set out in the American with Disabilities Act, a continuance until after April 1, 2021 constitutes a reasonable accommodation.

Federal courts should be safe and accessible to all people with disabilities; in accordance with judicial policy to combat discrimination, any officer of the court with a disability should be granted reasonable accommodations in the face of an evolving and dangerous pandemic. Specifically, in regards to undersigned counsel, federal

judiciary guidelines governing judiciary employees state unequivocally that, "Discrimination against employees based on disability is prohibited." See Sec.1.2. Judiciary Fair Employment Practices, *Reasonable Accommodation Guidelines for Persons with Disabilities*, located at http://jnet.ao.dcn/human-resources/human-resources-management/fair-employment-practices/reasonable-accommodation-guidelines-persons-disabilities (hereinafter "FEP policy). Moreover, "it is the policy of the federal judiciary to provide reasonable accommodations to all qualified applicants and employees with disabilities, to the extent that providing such an accommodation does not cause an undue hardship on the federal judiciary."[1] *Id*. Undersigned counsel, as a judiciary employee, is merely requesting this court follow judicial policy to protect Mr. Silva's right to counsel and counsel's rights to non-discrimination based on a disability during a pandemic.

I.     **Relevant History**

Mr. Silva was indicted on November 12, 2020. Dkt. 1. Counsel was notified of the December 18, 2020 Initial Appearance/Arraignment on November 20, 2020. Dkt. #9, 10.

Defense counsel filed the Motion for Order to the Bureau of Prisons on September 9, 2020. Case No. 1:19-mc-00001, Dkt. # 40. The magistrate judge has yet to rule on that motion, but on November 30, 2020 scheduled a hearing on the motion to coincide with the Initial Hearing/Arraignment. Case No. 1:19-mc-00001, Dkt. #47.

---

[1] This policy applies to federal public defender organizations as well as court units and chamber staff. *Id*.

The government filed its Notice of Intent to Seek the Death Penalty on December 4, 2020. Dkt. #11.

Samuel Silva was scheduled for an in-person Initial Hearing/Arraignment and hearing on the Motion for Order to the Bureau of Prisons on December 18, 2020. Counsel for Mr. Silva asked the magistrate judge to continue the hearing for two primary reasons: (1) Mr. Silva has the right to have two attorneys, including learned counsel, at all substantive hearings; and (2) Mr. Silva's quarantine period was interrupted. The magistrate judge did not issue an order on the docket, but instead appeared to have denied the motion by email for December 15, 2020. After the magistrate's denial, counsel requested the district court review the email order denying the defense motion to continue the hearing.

The district court on January 22, 2021 gave an opinion stating its belief that, "Reading between the lines, if not literally, it appears that defense counsel contemplates no court proceedings in this case until this summer or fall, if then." Dkt. #19 at 2. That assumption was incorrect; counsel in this motion are requesting a continuance of five weeks. The district court further stated that, "If counsel believes that his[2] health may be adversely affected by his representation in his case, he obviously must consider his status, the sooner the better." *Id*. at 3. Suggesting disabled counsel have lesser employment opportunities and restricted or denied access to federal courts is contrary to Judicial Conference policy and principles of equal justice and access. This court can uphold those principles by considering

---

[2] Referencing counsel Patrick Burke.

judicial policy on non-discrimination and granting reasonable accommodations.

## II. Background

The global pandemic, COVID-19, has brought about extraordinary circumstances that have changed the way all Americans can work, socialize, and meet basic needs without endangering both their own health and the health of others.

On March 11, 2020, the World Health Organization declared a global pandemic of the novel coronavirus, or COVID-19. COVID-19 is a highly contagious and potentially deadly respiratory illness that causes fever, cough, and shortness of breath. *See* Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID-19).[3] The disease can cause long-term health effects as well as long-term disability. It can result in organ damage, including dramatically reducing lung capacity, incapacitation of the kidneys, and inflammation of the heart.[4] Even in people without pre-existing health conditions who contract mild cases, COVID-19 can cause lasting symptoms, including brain fog, fatigue, dizziness, headache, muscle aches, heart palpitations, nausea, diarrhea, and intermittent spiking fevers that can last for months.[5] It is a virus that has killed over 400,000 people and both metaphorically and literally disabled all Americans.[6]

---

[3] *See* https:// https://www.cdc.gov/coronavirus/2019-nCoV/index.html
[4] *See COVID-19 (coronavirus): Long-term effects*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351 (last visited Feb. 1, 2021); *Long-term Effects of COVID-19*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html (last visited Feb. 1, 2021); C. John Sperati, *Coronavirus: Kidney Damage Caused by COVID-19*, John Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-kidney-damage-caused-by-COVID19 (last visited Feb. 1, 2021).
[55] Carolyn Barber, *The Problem of 'Long-Haul' COVID*, Scientific American, https://www.scientificamerican.com/article/the-problem-of-long-haul-COVID/ (last visited Feb. 1, 2021).
[6] For some Americans, they have been in quarantine for almost 11 months. No one in this country has escaped some form of limited access to public spaces and social interaction.

Moreover, variants of the COVID-19 virus have emerged that are both more infectious and vaccine resistant.[7] Vaccine roll-out has been slow and uneven; millions who qualify as high-risk for a fatal infection are still awaiting vaccination, and vaccine-resistant strains of the virus will require additional vaccine boosters to adequately inoculate people against the disease.[8]

The unforeseen and unprecedented circumstances that have arisen from the COVID-19 pandemic are beyond counsel's control and require additional considerations by courts in the face of extraordinary circumstances.[9] These considerations should include judicial policy on fair employment practices, which provide protections for disabled individuals.

---

[7] A variant of the COVID-19 virus, first identified in South Africa, that is vaccine and immunity resistant has now been discovered to have infected individuals by community spread in South Carolina. Two other variants are considered to be up to 70% more infectious. Carolyn Y. Johnson and Joel Achenbah, *Coronavirus variant first seen in South Africa identified in South Carolina*, Washington Post, Jan. 28, 2021, https://www.washingtonpost.com/health/2021/01/28/south-africa-variant-south-carolina/. Given the ever-changing circumstances, counsel will immediately alert this court should any CDC recommendations or public health directives change.

[8] Lena H. Sun et al, *Vaccines were a chance to redeem failures in the U.S. coronavirus response. What went wrong?*, Washington Post, Jan. 11 2021, https://www.washingtonpost.com/health/COVID-vaccine-slow-rollout/2021/01/11/2e804898-5100-11eb-bda4-615aaefd0555_story.html; *Pfizer working on booster shot to protect against COVID-19 variants*, Reuters, Jan. 26, 2021, https://www.reuters.com/article/us-health-coronavirus-pfizer-vaccine/pfizer-working-on-booster-shot-to-protect-against-COVID-19-variants-idUSKBN29V1ZU (last visited Feb. 1, 2021).

[9] A number of federal courts have found COVID-19 an "extraordinary circumstance" in the context of equitable tolling of statutes of limitations. *See e.g., Cowan v. Davis*, No. 1:19-cv-00745, 2020 WL 1503423, at *2 (E.D.Cal. Mar. 30, 2020) (noting the "extraordinary and unforeseeable circumstances arising from the COVID-19 pandemic"); *Cowan v. Davis*, No. 1:19-cv-00745, 2020 WL 4698968, at *3 (E.D.Cal. Aug. 13, 2020) (again noting the "extraordinary circumstances brought about by the COVID-19 pandemic"); *Hutto v. Cain*, No. 3:20-CV-98, slip op. at 1, 2 (S.D.Miss. Jun. 6, 2020) (finding the "[pandemic] situation presents a rare and exceptional event," and finding the petitioner's situation "is rare and extraordinary"); *Fitzgerald v. Shinn,* No. CV-19-5219, 2020 WL 3414700, at *2 (D.Ariz. Jun. 22, 2020); *Brown v. Davis*, No. 1:19-cv-01796, slip op. at 13 (E.D.Cal. Aug. 27, 2020) (noting the "extraordinary circumstances brought about by the COVID-19 pandemic");*see also Pickens v. Shoop*, No. 1:19-cv-558, 2020 WL 3128536, at *3 ("It also seems obvious that 'extraordinary circumstances' likely stand in the way of [Petitioner] timely filing a complete petition. In fact, that is probably an understatement.").

### III. This court should consider judicial policy and mandates, which incorporate the Americans with Disabilities Act, when scheduling hearings during the COVID-19 pandemic.

While no legislation mandates protection based on disability in federal courts, the federal judiciary has repeatedly and explicitly stated its commitment to non-discrimination against disabled people. *See generally* Mamadi K. Corra, *Disability and the Federal Courts: A Study of Web Accessibility*, Federal Judicial Center, 2019.[10] In its strategic plan for 2020, the Judicial Conference[11] reaffirmed its commitment to upholding the protections of the ADA and stated that, "Equal justice requires fairness and impartiality in the delivery of justice and a commitment to non-discrimination, regardless of [ ] disability." *Strategic Plan for the Federal Judiciary*, Judicial Conference of the United States, Sept. 2020 at 4 (hereinafter "Strategic Plan").[12] In order to fulfill the goal of "fair, impartial, and effective administration of justice," one of the three strategies to accomplish that goal is "Strengthen the protection of judges, court employees, and the public at court facilities." *Id*.

In compliance with that strategy, the Judicial Conference adopted several measures "to ensure an exemplary workplace in which all employees are treated with dignity and respect, and on a non-discriminatory basis." Strategic Plan at 9. To meet this standard:

> The federal courts must consider carefully whether they are continuing to meet the litigation needs of court users. In the criminal context, where the vast majority of federal criminal defendants are eligible for the appointment of counsel, *the judiciary must ensure that the needs of appointed counsel and the clients they represent are met.*

---

[10] Available at https://www.fjc.gov/content/343147/disability-and-federal-courts-study-web-accessibility.
[11] The Judicial Conference is the national policy-making body for the federal courts. See 28 U.S.C. § 331.
[12] Available at https://www.uscourts.gov/sites/default/files/federaljudiciary_strategicplan2020.pdf.

*Id.* at 21 (emphasis added). As such, this court should consider the policy objectives of the federal judiciary when making determinations which could put the well-being of counsel and clients at risk.

Additionally, undersigned counsel is a federal judiciary employee. The Judicial Conference has adopted a Model Employment Dispute Resolution plan which was created to be comparable to the protections provided by the Americans with Disabilities Act of 1990 (ADA). *See* FEP Policy Sec. 1.3. Specifically, "Judicial employees and applicants with disabilities have certain rights and responsibilities with respect to requesting and obtaining reasonable accommodations when such accommodations are needed [ ] to perform essential job functions." *Id.* Undersigned counsel merely requests a reasonable accommodation for an episodic disability.

Given that the judiciary has aligned itself with the protections provided by the ADA, it is notable that the ADA was passed specifically for situations such as now, when disability would prevent counsel from participating equally in the judicial process and fulfilling their roles as advocates for Mr. Silva's due process rights.

The American with Disabilities Act of 1990 (ADA) was passed to ensure "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society." 42 U.S.C. § 12101(a)(1). Congress found that "individuals with disabilities continually encounter various forms of discrimination, including [ ] the discriminatory effects of [ ] overprotective rules and policies, failure to make modifications to existing facilities and practices, [ ] and relegation to lesser [ ] activities, benefits, jobs, or other opportunities." *Id.* at (a)(5).

### A. Discrimination

Discrimination is defined as "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability." Generally, a disabled person establishes discrimination under the ADA when they " '(1) [are] an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [the] disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations.' " *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n. 11 (4th Cir.2001) (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999)). Counsel recognize that while not bound by the ADA, the judiciary has adopted its protections; this court has the power to prevent the injustice that would occur were those protections not granted. Counsel meets the definition of a disability and is merely asking to delay a hearing until that disability can be cured.

Counsel should have the opportunity to participate on an equal basis, including working under protections from a possibly devastating and fatal disease equal to those granted the court and the government, in proceedings in a federal courtroom. Counsel should not be forced to choose between life and health, and the due process and Sixth Amendment rights of their client, when a reasonable accommodation is available. Thus, this court should consider the policy directives, strategic goals, and judicial commitment to non-discrimination, grant reasonable accommodations due to disability, and set a hearing date for after April 1, 2021.

### B. Disability

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." See § 12101(1)(A). The ADA states that definition should be "construed in favor of broad coverage of individuals," and includes individuals with an "episodic impairment." *Id.* at (4)(A), (D). Moreover, that impairment need not limit every major life activity in order to be considered a disability; it is enough that the impairment limits one, such as an individual's ability to work. *Id.* at (4)(C). Finally, the determination of disability must be made "without regard to the ameliorative effects of mitigating measures" including medical supplies or equipment. *Id.* at (E)(i)(I).

Courts have found that individuals without established immunity to COVID-19 have a disability. In determining whether voters without COVID-19 immunity qualified as "disabled" under the law, the District Court for the Western District of Texas found that "a lack of immunity from COVID-19 is indeed a physical condition" that severely impairs an individual's ability to participate in major life activities. *Texas Democratic Party v. Abbott*, 461 F. Supp. 3d 406, 419 (W.D. Tex.), vacated and remanded on other grounds, 978 F.3d 168, 193 (5th Cir. 2020). Moreover, "fear and anxiety [of contracting COVID] is inextricably intertwined with [ ] physical health." *Id.* The court asserted that one's right to participate on an equal basis "should not be

elusively based on the whims of nature."[13] *Id.*

Undersigned counsel, "who can perform the essential functions of the employment position," currently suffers from an episodic disability which will be cured upon vaccination. 42 U.S.C. § 12111(8); § 12101(1)(D). Accommodating an episodic disability in order to prevent potential long-term or permanent disability—which could require greater accommodations and delays—is certainly in this court's and all parties' interests, and would conform with Judicial Conference mandates on non-discrimination.

**C. Reasonable accommodation**

"One form of discrimination prohibited by the ADA is a failure to make a reasonable accommodation." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011). "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability ... to perform the essential functions of [a] position,'; or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by ... other similarly situated employees without disabilities." *Equal Employment Opportunity Comm'n v. Manufacturers & Traders Tr. Co.*, 429 F. Supp. 3d 89, 102–03 (D. Md. 2019) (internal citations omitted). Judicial Conference guidance directs that, "When considering potential

---

[13] The district court in the Northern District of Alabama recognized that, "Although COVID-19 presents risks to the entire population, people who have underlying medical conditions, such as diabetes or hypertension, or who are over 65, African-American, or disabled have substantially higher risk of developing severe cases or dying of COVID-19." *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1192 (N.D. Ala. 2020), appeal dismissed, No. 20-12184-GG, 2020 WL 5543717 (11th Cir. July 17, 2020). This describes every attorney on Mr. Silva's team. Mr. Silva's attorneys should have the opportunity to participate equally in judicial proceedings, and should not be endangered or discriminated against based on their status as high-risk individuals because of circumstances completely out of their control.

reasonable accommodations, the employer should focus on those accommodations that will be effective in overcoming the identified workplace barriers for the individual employee." Sec. 3.2 FEP Policy, Step 7.[14] For purposes of the ADA, "reasonable accommodations" may comprise "modified work schedules," under 42 U.S.C. § 12111(9)(B). *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344–45 (4th Cir. 2013). Counsel continues to work, but is asking for an even less onerous accommodation: the delay of a non-emergency hearing.

Granting this motion to delay an in-person hearing for 5 weeks is a reasonable accommodation. Based on data collected February 1, 2021, Lee County, where USP Lee sits, has a 29% COVID-19 positivity rate and is at an "extremely high risk level."[15] Washington County's numbers are marginally better, with a 21% positivity rate, but is still classified as "extremely high risk."[16]

This court should consider the risk of exposing defense counsel to a possibly debilitating or fatal disease in order to hold an in-person hearing in a county with one of the highest positivity rates in the state without granting a reasonable accommodation of a 5-week delay. The failure to consider these risks is in violation of judiciary policies and procedures.

## IV. Mr. Silva's hearing can be delayed without undue burden or prejudice to either party.

The guidance set forth in the Second Amended Standing Order 2020-10 and

---

[14] http://jnet.ao.dcn/human-resources/fair-employment/reasonable-accommodation-guidelines-persons-disabilities/3-procedures#5
[15] https://www.nytimes.com/interactive/2021/us/lee-virginia-covid-cases.html?action=click&module=covid_tracking&pgtype=Interactive&region=TableRowLink
[16] https://www.nytimes.com/interactive/2021/us/washington-virginia-covid-cases.html?action=click&module=covid_tracking&pgtype=Interactive&region=TableRowLink

2020-14, issued by the Court on December 3, 2020, suspending jury trials and tolling the Speedy Trial Act until March 1, 2020 along would establish that a finite and limited delay would not be an undue burden. The standing order was itself a reasonable accommodation in this pandemic, as it was implemented to protect litigants, court staff, and the public. Though the standing order permits in-person hearings to take place, it does not require non-essential in-person hearings that would endanger counsel and deny protections to disabled persons.

Delaying these proceedings is in the interest of equal protection and access, would align with non-discriminatory policies adopted by the federal judiciary, and would ensure that Mr. Silva receives and retains competent counsel. A delay of five weeks is not unreasonable—especially considering the risks to counsel and the resulting delay that a COVID-19 infection could cause. And this minor delay furthers the interest of justice by ensuring that the defense team can properly focus on the matter at hand—effectively representing Mr. Silva.

We respectfully ask this court to continue Mr. Silva's Initial Hearing and Arraignment and hearing on Motion for Order to the Bureau of Prisons to grant a reasonable accommodation and set a new date for after April 1, 2021.

    Respectfully Submitted,

    JUVAL O. SCOTT
    Federal Public Defender
    for the Western District of Virginia

    s/*Juval O. Scott*
    Juval O. Scott
    Office of the Federal Public Defender
    for the Western District of Virginia
    210 First Street SW, Suite 400
    Roanoke, VA 24011

(540) 777-0880
Indiana Bar No. 23741-49


*s/ Patrick J. Burke*
Patrick J. Burke
Patrick J. Burke, P.C.
303 16th Street, Suite 200
Denver, CO 80202
(303) 825-3050
Colorado Bar No. 4943

*Counsel for Samuel Silva*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was electronically filed and will be forwarded to counsel for the government and counsel for the Bureau of Prisons by electronic mail on this ____ day of February, 2021.

Zachary Lee  
Criminal Chief  
United States Attorney's Office  
310 Cummings Street, Suite A  
Abingdon, VA 24210  
Zachary.lee@usdoj.gov  

Daniel Bubar  
Acting United State's Attorney  
United States Attorney's Office  
310 Cummings Street, Suite A  
Abingdon, VA 24210  
Daniel.bubar@usdoj.gov  

s/*Juval O. Scott*