**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20CR00017** |
| | ) | |
| | ) | |
| **SAMUEL SILVA** | ) | |

## GOVERNMENT RESPONSE TO DEFENDANT'S AMENDED FIRST MOTION FOR DISCOVERY

The United States, through undersigned counsel, responds in part without objection and in part in opposition to the defendant's Amended First Motion for Discovery (Doc. 154) ("Motion"). While many of the defendant's requests are well placed and in comport with the required disclosures pursuant to Fed. R. Crim. P. 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and their progeny, a large number of the requests do not fall within the materials contemplated by those rules or precedents and are irrelevant, immaterial and/or overbroad.

## BACKGROUND

Samuel Silva, age 47, a former resident of New Mexico, was an inmate at United States Penitentiary Lee County ("USP-LEE") on September 14, 2018, serving a 564 month term of imprisonment following his being found guilty and sentenced for multiple offenses in 2014 involving a particularly brutal attempted carjacking of a 66 year-old woman who Silva threatened with a gun and assaulted, and a completed carjacking of a 53 year-old man who Silva shot. Additionally, while incarcerated on those charges, Silva attempted to have witnesses against him

1

killed in order to prevent their testimony against him.[1]  Prior to his incarceration on the offenses

that led him to USP-Lee, Silva had a long history of convictions for violent offenses, beginning at

age nineteen, including attempted murder, aggravated assault, and weapons offenses.  Silva was

also a long-time member of a particularly violent New Mexico State Prison Gang, the Syndicato

de Nuevo Mexico ("SNM").[2]

On September 14, 2018, USP-Lee was on lockdown such that all inmates were confined to

their cells.  On that date, Silva was locked in his cell with his cellmate Abraham Aldana, a member

of the Sureños gang, serving a 324 month sentence for racketeering offenses.  At approximately

4:06 p.m., Bureau of Prisons correctional officers were conducting a regular and routine count of

inmates and approached Silva and Aldana's cell and viewed Aldana lying face down in a pool of

blood on the floor and Silva standing next to the door holding his shower shoes and his BOP

identification card.  Notably, no duress by Silva was indicated.  It was later determined that Aldana

suffered blunt trauma to his head and face, including multiple fractured teeth and bruising to his

temporal scalp and forehead, 136 stab wounds purportedly made by a shank that was found sticking

out of the top of his head, 15 incision wounds, and was gagged with socks.  Notably, Silva had no

injuries other than a complaint of pain in his knee.  Evidence gathered during the investigation of

the killing of Aldana demonstrated that the killing took place, at least in part, because permission

had been granted by the Mexican Mafia and his own gang for Aldana to be killed due to some

violation of the Sureños rules or directives.

---

[1] An intervening arrest of a fellow gang member prevented the fellow gang member from
carrying out Silva's request for the murder of the witnesses against him.
[2] *Syndicato de Nuevo Mexico targets cops, prosecutors and judges*, Albuquerque Journal, Sept. 9,
2019: https://www.abqjournal.com/1369435/syndicato-de-nuevo-mexico-targets-cops-
prosecutors-and-judges.html; *Hell House – The Syndicato Nuevo Mexico*, Gangland Season 6
Episode 13, April 4, 2010, https://www.dailymotion.com/video/x3h8xr0.

Silva was indicted on one count of first degree murder on November 12, 2020, in violation of 18 U.S.C. 1111, for the murder of Aldana. While originally the government had noticed its intent to seek the death penalty (Doc. 11), on May 26, 2022, that request was withdrawn upon motion of the government. (Doc. 153.) Discovery productions have been made to counsel for Silva on two occasions, namely, March 18, 2019, and March 2, 2021, totaling 9,518 pages of documents, videos, and audio recordings.[3] Included with the March 2, 2021, disclosure, the government also provided a seventy page discovery index that specifically identified what materials it was disclosing and the Bates numbers associated with those materials. On June 10, 2022, the defendant filed the instant Motion.

The defendant's Motion is broken down into five sub-parts: 1) Discovery related to the events of September 14, 2018; 2) Discovery related to BOP prison security, staffing, and incidents of violence at BOP institutions; 3) Discovery related to prison gangs; 4) Discovery of information relating to the decedent; and 5) Discovery regarding witnesses working with the government or providing information to the government. While the government will address each request in more detail, it is clear that much of the defendant's request is a fishing expedition that is wholly inappropriate and irrelevant to the question of whether or not Samuel Silva violated 18 U.S.C. § 1111 in the killing of Abraham Aldana. The defendant clearly wishes to distract from the case at hand and instead try to put the BOP on trial for some alleged grievances of the inmate population, matters that have no relation to what occurred within the cell occupied by Silva and Aldana on September 14, 2018. Secondly, much of the defendant's requests appear to be a search for "mitigation evidence" that would be potentially be appropriate in a death penalty case, but which is no longer appropriate since the government no longer intends to seek the death penalty.

---

[3] Notably, one of these disclosures was made to defense counsel prior to indictment and both were made prior to the filing of any motion for discovery or the entry of an order to provide discovery.

Importantly, in the defendant's request for production, there is little to no specificity or detail regarding why or how the broad swath of materials, many relating to timeframes and locations that are completely outside of anything related to this case, are relevant or material to the case in question. For these reasons, the court should deny the majority of the requests for discovery in the Motion and only order disclosure those materials that are properly within the requirements of Fed. R. Crim. P. 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972) and their progeny.

## **LEGAL FRAMEWORK**

Federal Rule of Criminal Procedure 16 details the government's obligations to disclose materials that are not considered *Brady* or *Giglio* materials. Relevant to the requests in the Motion, the rule requires:

(a) Government's Disclosure.

(1) Information Subject to Disclosure.

(A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

(B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
    (i) any relevant written or recorded statement by the defendant if:
• the statement is within the government's possession, custody, or control; and
• the attorney for the government knows--or through due diligence could know--that the statement exists;
    (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
    (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

(D) Defendant's Prior Record. Upon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows--or through due diligence could know--that the record exists.

(E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
　　　　(i) the item is material to preparing the defense;
　　　　(ii) the government intends to use the item in its case-in-chief at trial; or
　　　　(iii) the item was obtained from or belongs to the defendant.

………

(2) Information Not Subject to Disclosure. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16. As noted in the rule, the definitive question as to the required production of materials pursuant to Fed. R. Crim. P. 16(a)(1)(E)(i) is whether or not the item requested is "*material* to preparing the defense." *Id.* (emphasis added).

Under subsection (i), the government must make available to the defendant any requested items that are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i).For the defendant to show materiality under this rule, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir.1975), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54.15 "[E]vidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993) (citations and internal quotations omitted).

*United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). Importantly, "[t]o obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality. Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (internal citations omitted). The government need not disclose "facially nonexculpatory evidence" that "might possibly be favorable to the accused by inferential reasoning." *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988). Additionally, "the government need not disclose evidence that is only "possibly useful to the defense but not likely to have changed the verdict." *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998).

Additionally, under *Brady* and *Giglio*, the government is required to disclose to a defendant all favorable evidence, meaning evidence that is either favorable or impeaching. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 150-152. However, *Brady* and *Giglio* may not be used as a fishing expedition by the defendant because "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). If a defendant

> can only speculate as to what the requested information might reveal, he cannot satisfy *Brady's* requirement of showing that the requested evidence would be "favorable to [the] accused." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *see United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ('The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.').

*Caro*, 597 F.3d at 619. Importantly, "as a general matter, evidence that merely impeaches those who do not testify lacks relevance, much less materiality." *United States v. King*, 628 F.3d 693, 703–04 (4th Cir. 2011).

Overbroad and conclusory requests for information, especially for information from the BOP, are not new nor have they been well received by the courts in both death penalty and non-death penalty cases. The Fourth Circuit has previously determined that discovery motions crafted in such a way to be "a shotgun fishing expedition for evidence" are not to be granted. *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973), *aff'd*, 417 U.S. 211, 94 S. Ct. 2253, 41 L. Ed. 2d 20 (1974).

A number of cases have dealt specifically with overbroad BOP discovery requests in Federal Death Penalty cases, and those Courts have rejected the claims for disclosure. *See United States v. Caro*, 461 F.Supp. 2d 478, 481 (W.D. Va. 2006) (denying immaterial discovery request for BOP information in a capital case), *aff'd in* 597 F.3d at 621; *United States v. Lujan*, 2011 WL 13210243, at *2 (D.N.M. Sept. 7, 2011); *United States v. Troya*, 2008 WL 11407285 at *1 (S.D. Fla. Oct. 9, 2008); *United States v. Umana*, 2010 WL 11549078, at *1 (W.D.N.C. Apr. 19, 2010).

*Caro* is particularly illustrative because it concerns a defendant in this district who was a gang member, like Silva, accused of murdering a cellmate in USP-Lee, like Silva, who also requested wide-ranging discovery from BOP, like Silva. *See Caro*, 461 F. Supp. 2d at 479, *aff'd United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). Judge Jones appropriately denied, as immaterial, access to BOP records about all inmates confined to a certain unit, all incidents of inmate violence in that unit, and all inmate homicides within BOP facilities for the previous 20 years. *See Caro*, 461 F. Supp. 2d. at 480-81. The government references this case in particular to illustrate that not all information requested by Silva is material, and that the defendant bears the burden of demonstrating materiality. *See also Lujan*, 2011 WL 13210243 at 5 ("Defendant has presented nothing to indicate that the statistical evidence would significantly alter the quantum of proof in his favor"); *Umana* 2010 WL 11549078 at 5 (defendant did not make "a sufficient

showing of materiality to require disclosure under [Rule 16]"); *Troya* 2008 WL 11407285 at 6 (defendant did not state "how, when, or why the information would be material").

Additionally, overbroad and immaterial requests for discovery have the potential to jeopardize inmate and institutional security in cases involving prisons and crimes committed in prisons. In *United States v. Williams*, 791 F.2d 1383 (9th Cir. 1986), the court was asked to determine whether or not the denial of a discovery request for records relating to prison security measures and other information relating to prison authorities' prior knowledge of an escape plan. Appropriately, the court weighed the materiality of such a request versus the possibility of security concerns for a penal institution and determined,

> [t]he district court correctly balanced the competing interests in reaching its discovery ruling in the present case. *See United States v. Mills*, 641 F.2d 785, 790 (9th Cir.), *cert. denied*, 454 U.S. 902 (1981); *United States v. Lanci*, 669 F.2d 391, 393 (6th Cir. 1982.) After reviewing the disputed evidence in camera, the court concluded that the information sought to be discovered was not sufficiently material to overcome the government's compelling interests in inmate safety and prison security. The district court, therefore, properly exercised its discretion by considering the competing interests and denying the discovery requests here at issue.

*United States v. Williams*, 791 F.2d at 1387.

Additionally, the defendant requests detailed information regarding individuals that have provided information to the government related to the violent history of Silva and the events of September 14, 2018. In essence, Silva wishes to pierce the veil to learn the intimate details of individuals who have provided information to the government. Importantly, because this case is no longer a death penalty case and Silva's long violent history as a member of SNM will not be part of any evidence introduced to seek the death penalty, the majority of the individuals interviewed by the government who provided information about the brutal crimes committed by Silva and his extremely violent criminal activities are no longer contemplated as being witnesses in any fashion of the prosecution. For individuals who are not witnesses at trial and who simply

provided information to law enforcement during an investigation, the court's have recognized a privilege to prevent the disclosure of the identity of these individuals. As discussed in *United States v. Bell*, 901 F.3d 455, 466–67 (4th Cir. 2018),

> The "informer's privilege," which protects a confidential informant's identity, "is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information [about crimes]" to law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro*, the Court declined to adopt a bright-line rule for determining when a defendant may pierce the privilege, stating that the issue instead calls for case-by-case "balancing [of] the public interest in protecting the flow of information [to law enforcement] against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. 623. Whether disclosure should be ordered therefore depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* And in applying *Roviaro*, we have held more particularly that "the government is privileged to withhold the identity of [an] informant when [he] was a 'mere tipster,' or was used only for obtaining a search warrant, but that failing to disclose the informant's identity more likely amounts to error when the informant was an active participant in the events leading to the arrest of the accused." *United States v. Gray*, 47 F.3d 1359, 1365 (4th Cir. 1995) (emphasis added) (citations omitted).

*United States v. Bell*, 901 F.3d 455, 466–67 (4th Cir. 2018). This privilege is especially important due to the violence that is brought upon those who cooperate with the government and is compounded in a correctional setting where cooperating with law enforcement in any fashion can lead to severe repercussions from other inmates. *See United States v. Doe,* 962 F.3d 139 (4th Cir. 2020)*; United States v. Doe*, 870 F.3d 991 (9th Cir. 2017).

Importantly, federal prosecutors are deemed to have access to "anything in the possession, custody or control of any federal agency participating in the *same investigation* of the defendant", however, "a prosecutor need not comb the files of every federal agency which might have documents regarding the defendant" in order to fulfill his Rule 16 obligations. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (emphasis added). Finally, especially when a defendant requests broad swaths of information, when the government shows that compliance with

a discovery request under Rule 16 would be overly burdensome, "it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." *Mandel*, 914 F.2d at 1219

**SPECIFIC REQUESTS**

The defendant has made numerous requests for materials to be disclosed in five separate sub-categories and the government will respond to those requests in the same format. Materials referenced as having been produced or that the government agrees to produce in the future are the totality of a diligent search by law enforcement officer with the BOP or the FBI. Additionally, in responding to these requests, for representations that materials do not exist, this representation is based upon a diligent search for those materials by law enforcement officers with the BOP and FBI involved in the investigation that was unable to locate the specific records or items requested.

**A. DISCOVERY RELATED TO THE EVENTS OF SEPTEMBER 14, 2018**

1)      All video/audio recordings which captured the incident involving inmates Samuel Silva and Abraham Aldana at USP Lee on September 14, 2018, and any pertinent video/audio recordings from within USP Lee's A-Unit, including any video/audio recordings which captured the process of escorting the subject inmates to/from their shared cell. This is to include all video/audio recordings which captured the process of searching the subject inmates for contraband, including homemade weapons, by pat down searches, handheld metal detectors, or visual searches of any inmate prior to placing them in or removing them from the cell. (Some video has previously been provided through discovery, specifically 24-hour recordings from September 14, 2018, of A-Unit.)

- Video relevant to this incident in the possession of the government has been

provided in prior disclosures. No other relevant video exists other than that provided.

2)     All video/audio recordings which captured the interaction of inmates Samuel Silva and Abraham Aldana with other inmates or staff at USP Lee on September 14, 2018, and for the thirty-day period prior to September 14, 2018.

- Video relevant to this incident has been provided in prior disclosures. No other relevant video exists other than that provided.

3)     All video/audio recordings of Samuel Silva from the moment he was first approached by prison staff after the incident, including his removal from the unit; any interviews with prison staff; any medical evaluations, conversations with prison psychologist(s) or psychologist(s); interviews with the office of Special Investigation Systems (SIS), Special Investigation Agents (SIA) or any other BOP employees; interviews with outside law enforcement such as the FBI, or local law enforcement. All video recordings of Samuel Silva taken while he was undergoing any physical inspection. Copies of all reports which contain any alleged statements made by Samuel Silva, or which describe any alleged behavior or conduct of Mr. Silva after the incident.

- The government will provide videos of a post-incident medical assessment conducted and video monitoring of Silva while in the SHU on September 14, 2018. The government has provided in prior disclosures documentation of any statements made by Silva post-incident to BOP staff or law enforcement.

4)     All video/audio recordings which captured the assault on inmate Rudy Ball by inmate Abraham Aldana, at USP Lee in May 2018, and any video/audio recordings from the day of said assault from within the units where it occurred, or within the unit where the inmates involved were housed.

- The government will provide the video of this incident that is in its possession.

5) The housing records/cell assignments/names and federal inmate register numbers of all inmates who were housed within the unit where Abraham Aldana died, and a photograph (head shot) of each inmate housed in the unit at the time of the incident. The names of all correctional officers and staff members at USP Lee who were on duty the day of the incident and what their assigned duties were that day. (Portions of the requested information have been provided, but this information was not received in full.)

- This information has been provided in prior disclosures.

6) All information obtained at any time by the Designation and Sentencing Computation Center (DSCC) or other BOP officials including SIS memorandum of interviews or debriefs that references Samuel Silva, and all pipeline information related to his transfers to a BOP facility before and after September 14, 2018, that is, any information sent to a receiving facility or any information given to transportation officers regarding classification or security issues for Samuel Silva.

- The only information available for this request has already been provided in Silva's Central File, which was provided in a prior disclosure.

7) Copies of all letters and emails to and from Samuel Silva that are in the possession of the BOP and all recordings "jail calls" of Samuel Silva. (Some audio calls from 9/04/18-9/12/18 have been provided.)

- The government will provide letters and emails to and from Silva that are in its possession. Additionally, the government will provide all recorded phone calls from Silva that are in its possession, namely phone calls from 4-14-2018 to 9-14-2018. Some of these calls have already been provided in a prior

disclosure.

8)      All rough notes/reports of any interviews of any known government witnesses relating to the investigation of the death of BOP inmate Abraham Aldana.

- The government has provided redacted interview reports and rough notes of individuals interviewed relating to Silva and the death of Aldana and will continue to do so in the event additional individuals are interviewed and their disclosure is required pursuant to Fed. R. Crim. P. 16, *Brady*, and *Giglio*.

9)      All rough notes of any debrief of any known government witness conducted during the investigation of the death of BOP inmate Abraham Aldana.

- The government has provided redacted interview reports and rough notes of individuals interviewed relating to Silva and the death of Aldana and will continue to do so in the event additional individuals are interviewed and their disclosure is required pursuant to Fed. R. Crim. P. 16, *Brady*, and *Giglio*.

10)     All housing or transport records for any government witness for the period beginning September 14, 2018, to the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

11)     Audio recordings of any interviews of government witnesses relating to the death of BOP inmate Abraham Aldana or any debrief of any government witness conducted in a course of the investigation of the death of BOP inmate Abraham Aldana.

- The government is not aware of any audio recordings of any witness interviews that were conducted in the course of the investigation of the death of Aldana.

12)     All key indicator data or correctional services significant incident data for USP Lee for the five years preceding the death of BOP inmate Abraham Aldana, including, but not

limited to, data reflecting rates of assaults on inmates, rates of assaults of staff, hit rates of random urinalysis, and hit rates of suspect group urinalysis tests.

- The government objects to this request as it is overly broad and unduly burdensome. Additionally, Silva has failed to make a *prima facie* showing of materiality for this request.

13) The urinalysis testing schedule for the A-Unit at USP Lee from January 1, 2018, through September 30, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

14) All BOP forms BP-A657.013, inmate telephone call monitoring reports, or inmate monitoring tape access logs for any government witness, for Samuel Silva and Abraham Aldana, or any target of the investigation into the death of BOP inmate Abraham Aldana.

- The government is not certain what the defendant is requesting, however the government will be provide information from TRULINCS and TRUFONE which will provide some of this data. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

15) All disciplinary or administrative segregation notices and supporting documents for any known government witness to the events of Abraham Aldana's death.

- The government is aware of its obligations pursuant to *Giglio* for those witnesses it intends on calling at trial, and will disclose that information. Otherwise, The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

16) All recordings of radio communications at USP Lee within 12 hours before and

after the incident resulting in the death of BOP inmate Abraham Aldana.

- Radio transmissions are not recorded and therefore there is no record to produce.

17) Any electronic records establishing the locked or unlocked status of all cell doors and cell block entrances or exits at the housing unit for the entire day of September 14, 2018.

- There is no electronic record of the status of cell doors or cell block entrances.

18) All records relating to the decision made to install, replace, and maintain cell bunks in USP Lee made from metal rather than other materials.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

19) All records documenting the discovery of contraband/prison weapons at USP Lee for the period January 1, 2015, through September 14, 2018 including the notation of what material the weapons were made of and, in the case of shivs, whether they were made of metal or other material and, if metal, where the metal was obtained by the inmate or inmates involved.

- The government objects to this request as it is overly broad and unduly burdensome. Additionally, Silva has failed to make a *prima facie* showing of materiality for this request.

20) All records specifically documenting the search and discovery of contraband/prison weapons at USP Lee for the period January 1, 2017, through December 31, 2018, relating to weapons located in the housing units.

- The government objects to this request as it is overly broad and unduly burdensome. Additionally, Silva has failed to make a *prima facie* showing of materiality for this request.

21) Any documents establishing physical mail or phone contact between any

investigator participating in the investigation of the death of BOP inmate Abraham Aldana and any government witness or his attorney.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

22)     Any documents establishing that government witnesses received any documents relating to the death of BOP inmate Abraham Aldana.

- The government is not aware of, nor has it located, any documentation of government witnesses receiving documents relating to the death of Aldana.

23)     A complete copy of Samuel Silva's BOP C-file, all BOP documents alleging misconduct or disciplinary infractions; all BOP documents that detail Samuel Silva's work and education history; all BOP documents that include medical or mental health treatment of Samuel Silva that are outside of the scope of existing Protective Orders. This is to include all six sections of inmate Samuel Silva's Central files. (Portions of the requested file have been provided through discovery.)

- These materials have been provided in a prior disclosure.

24)     All documents reflecting all assignments of prisoners designated members of strategic threat groups, or disruptive groups, or management interest groups at USP Lee from January 1, 2017, until December 31, 2018.

- The government will provide a list of inmates in the A Housing Unit on September 14, 2018, with their assignments.  Otherwise, The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

25)      Central Inmate Monitoring System (CIMS) clearance and separation data for inmates Samuel Silva and Abraham Aldana. All information to support the CIM (Central Inmate

Management) assignments and Classification of each of these inmates.

- These materials have been provided in a prior disclosure.

26) All documents, including the audio recordings of any hearings, related to any BOP disciplinary or administrative proceedings related to the death of BOP inmate Abraham Aldana.

- The government will provide the Control Unit Hearing Administrator's Report and the Notice of ADX Control Placement

27) All video recordings of activity at USP Lee, taken anywhere within the facility, on September 14, 2018.

- All video available from the timeframe requested has been provided in a prior disclosure. This consists of 24 hours of video recording from the A Housing Unit. No other video recordings are maintained by the BOP relevant to this incident.

28) All video recordings of activity at USP Lee, taken anywhere within the facility for 30 days prior to September 14, 2018, and three days after.

- All video available from the timeframe requested has been provided in a prior disclosure. This consists of 24 hours of video recording from the A Housing Unit. No other video recordings are maintained by the BOP relevant to this incident. Regardless, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

29) All documents detailing institutional lockdowns at USP Lee for 24 months prior to September 14, 2018. This includes documents that provide the dates of and reasons for each lockdown, and whether it was a full lockdown or a modified lockdown.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

30)     It is believed that videos of inmate assaults have been collected on occasion into a montage-type video compilation including some that may have been labeled "Cowboys vs. Indians," "D.C. vs. Philly Boys," and the like and were widely distributed within the BOP and even briefly on YouTube. Mr. Silva requests all videos that have been collected or used for training or other purposes which show actual inmate-on-inmate assaults at USP Lee or other BOP facilities, for the dates of January 1, 2017, to the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

31)   Copies of the Board of Inquiry Report or Regional Inquiry Team (After Action Report) or Local Inquiry Team Report or any after action report and summary report conducted at USP Lee as a result of the incident on September 14, 2018. Also, the local response shall include the corrective action plan to the recommendations; all documents, records, video recordings, or working papers or personal records reviewed and created by members of the boards or teams, to include electronic material from September 14, 2018, to present.

- The government will provide the After Action Report relevant to the death of Aldana. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

32)     Copies of all Board of Inquiry Reports, Regional Inquiry Team Reports, Local Inquiry Team Reports, and local responses and corrective action plans or recommendations for all incidents of violence resulting in injury to inmates or staff at USP Lee for the past twenty years. Also, all documents, records, working papers, or personal records created by members of the boards or teams, to include electronic material.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

33) Copies of all Board of Inquiry Reports, Regional Inquiry Team Reports, Local Inquiry Team Reports, and local responses and corrective action plans for all BOP homicides for the past twenty years. This includes all documents, records, working papers or personal records created by members of the boards or teams, including electronic material.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

34) Threat Assessment conducted on the Security Threat Group New Mexican Syndicate (SNM).

- The government will provide the TRUINTEL SNM intelligence that is in its possession.

35) Threat Assessment conducted on the following Security Threat Groups: Mexican Mafia (EME); MS-13; Puente-13 and Sureños including breakdown by total count, institution, and security level, to include all members, associates, and subjects from September 14, 2015, to present.

- The government objects to this request as it is overly broad and unduly burdensome. Additionally, Silva has failed to make a *prima facie* showing of materiality for this request.

36) Breakdown of Security Threat Group members, associates, and suspects by number and group of the inmate population on September 14, 2018.

- The government will provide a list of inmates in the A Housing Unit on September 14, 2018, with their Security Threat Group assignments. Otherwise, The government objects to this request. Silva has failed to make a

*prima facie* showing of materiality for this request.  Additionally, The

government objects to this request as it is overly broad and unduly

burdensome.

37)     Copies of SIS bulletins or advisories issued for the inmate group/Security Threat

Groups New Mexican Syndicate (SNM), Mexican Mafia (EME), MS-13; Puente-13 and

Sureños.

- • The government objects to this request. Silva has failed to make a *prima facie*

  showing of materiality for this request.  Additionally, the release of this

  information could jeopardize the safety of inmates and institutions within the

  BOP.

38)     Copy of the SIS intelligence briefings provided to the institutional executive

staff for a 12-month period prior to the incident of September 14, 2018, and 6 months following

the incident of September 14, 2018.

- • The government will provide TRUINTEL Institutional Activity reports for

  the time period January 2018 to December 2018.  Otherwise, the government

  objects to this request. Silva has failed to make a *prima facie* showing of

  materiality for this request.

39)     Copy of the Validation Package and/or Validation Information for Samuel Silva,

Abraham Aldana, and any inmate identified as a potential witness to the incident on September

14, 2018.

- • The government will provide TRUINTEL STG validation criteria and

  information for Silva and Aldana.  Otherwise, the government objects to this

  request. Silva has failed to make a *prima facie* showing of materiality for this

  request.

40) Copy of all unit officer's post orders for the housing unit at USP Lee, both the general and specific sections at the time of the incident.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the release of this information could jeopardize the safety of inmates and institutions within the BOP.

41) Copy of all A-Unit Logbooks from January 1, 2016, through September 14, 2018.

- The government will provide this information for the time period of thirty days prior to September 14, 2018. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

42) Copy of the complete SIS file regarding the death of BOP inmate Abraham Aldana, to include the SIS report, Form 583, all materials required by the SIS Inmate File Check List, and all required Sentry data; all notes and records of all interviews, both staff and inmates; including but not limited to, all Mass Interview reports or forms. (Portions of Mass Interview Forms for Units A-K were provided through earlier discovery disclosure; however, the interview forms for some inmates, specifically those later interviewed in more detail by the government, were not provided.)

- This information has been provided in prior disclosures.

43) All Posted Picture File, STG (Security Threat Group) file, AIMS information, SIS card file, or any intelligence information maintained in the SIS Office for all inmates at USP Lee on September 14, 2018.

- The government objects to this request. Silva has failed to make a *prima facie*

showing of materiality for this request.

44)    Copy of the BOP Inmate Profile for Samuel Silva.

- The government has provided this information in a prior disclosure.

45)    Copy of the BOP Inmate Profile for all inmates housed in A-Unit on September 14, 2018.

- The government will provide this information.

46)    All SIS information/intelligence maintained in the SIS office on the following inmate groups/associations, including all members, suspects, and associates: the New Mexican Syndicate (SNM); the Mexican Mafia (EME); MS-13; Puente-13 and Sureños from January 1, 2017, to the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the release of this information could jeopardize the safety of inmates and institutions within the BOP. Additionally, The government objects to this request as it is overly broad and unduly burdensome.

47)    All information stored or maintained in the BOP intelligence (SIS) systems on Samuel Silva at each Bureau of Prison facility and prison where he was incarcerated, both in formal files and informal/investigative files and any data bases: AIMS, TRUINTEL, card files, in written form or maintained electronically.

- A diligent search of databases and files has been made by BOP officers and this information has been disclosed in a prior disclosure. Otherwise, The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, The government objects to this request as it is overly broad and unduly burdensome.

22

48)     A copy of the TRUINTEL Global Inmate Report for Samuel Silva and Abraham Aldana.

- The government will provide this information.

49)     Copies of the summary report of the Daily Sensitive Information Report and the Daily Lieutenants Log for a twelve-month period prior to September 14, 2018, and twelve months following.

- The government will provide this information.

50)     Copies of all Daily Lieutenant's Operational Logs from September 14, 2018, to September 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

51)     Copies of Form 583, Report of Incident, prepared by USP Lee for the years 2016-2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

52)     Copies of all monthly Lieutenants' meeting minutes from September 14, 2018, to September 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

53)     Copy of all warden/executive staff meetings and department head meetings from September 14, 2018, to September 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

54)     Copies of the Institutional Mass Shakedowns/Searches from September 14, 2018,

to September 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

55)    Records regarding contraband items found in USP Lee inmates' possession and/or their living or work areas which identify and discuss the processing and disposition of the contraband, for January 1, 2016, through December 31, 2018, including but not limited to housing unit shakedown logs.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

56)    Copies of all Correctional Services Program Reviews and responses for January 1, 2016, through December 31, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

57)    Copies of the two Program Reviews of USP Lee's Correctional Services Department that were conducted prior to September 14, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

58)    Copies of all regional staff assistance visits for/to USP Lee Correctional Services and the Disciplinary Hearing Officer and local responses to each visit for the period of January 1, 2017, through December 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

59)    The information required by the Inmate Discipline Program Statement 5270.09, regarding the Data Collection Requirements Codes 100 and 101 to include the following:

a. Type of weapon
b. Type of victim
c. Nature of injury
d. Referral for prosecution

for the period of January 1, 2017, through December 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

60)	The average daily population of the Special Housing Unit at USP Lee for the years 2016, 2017, 2018, and 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

61)	Copies of all Institution Character Profile reports conducted regarding USP Lee from activation to date.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

62)	Copies of all Prison Social Climate Surveys reports regarding USP Lee from activation to date.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

63)	Copies of all Institutional Duty Officer reports regarding USP Lee from March 14, 2018, to March 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

64)	Location, calibration, and daily inspection documents and maintenance records of all walk-thru metal detection devices within USP Lee from March 14, 2018, to March 14,

2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

65) Copies of USP Lee's pat search and visual search logs maintained and required by the Correctional Services Manual from January 1, 2016, through December 31, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

66) Copy of USP Lee's Correctional Services quarterly perpetual audit schedule and audits and correction action plans from March 14, 2018, to March 14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

67) Copy of the SIS intelligence briefings provided to USP Lee's executive staff from March 14, 2018, to March 14, 2019.

  a. The government will provide TRUINTEL Institutional Activity reports for the time period January 2018 to December 2018. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

68) All institutional prepared Report of Incident Form 583's for all inmate- on-inmate assaults at USP Lee, including but not limited to assaults with weapons from September 14, 2016, to March14, 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

69) Chronological Disciplinary Data (CDA) for guilty findings for the following prohibited acts,

      a.     Code 100 and Code 100A, Killing
      b.     Code 101 and Code 101A, Assaulting any person with serious injury, for inmate on inmate and inmate on staff.
      c.     Code 104 and Code 104A, Possession of weapon or sharpened instrument.
      d.     Code 224 and Code 224A, Assault with less serious injuries for inmate on inmate and inmate on staff.
      e.     Code 201 Fighting with another person

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

70)     Summary Report of the Guilty Findings for the following prohibited acts by calendar year, 2016-2018, which have occurred at all USPs:

    a.  Code 100 Killing
    b.  Code 101 Assault with serious injury
    c.  Code 104 Possession of a weapon
    d.  Code 224 Assault with less serious injuries
    e.  Code 201 Fighting
    f.  Code 203 Threatening Bodily Harm

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

71)     Copies of USP Lee's Disciplinary Hearing Officer Reports for:

    a. Code 100 Killing
    b. Code 101 Assault with serious injury
    c. Code 104 Possession of a weapon
    d. Code 224 Assault with less serious injuries
    e. Code 201 Fighting
    f. Code 203 Threatening Bodily Harm

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

72)     Copies of all Office of Internal Affairs staff sustained misconduct referrals at USP Lee following the incident of September 14, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. The government understands pursuant to *Giglio* that it must disclose impeachment information regarding any BOP witnesses that will be called at trial. The government intends on complying with that obligation.

73) Copies of Annual Refresher Training Agenda for the past five years, to include all specialty training and rationale for the training; Annual Training Plan and training committee meeting minutes and recommendations for the years 2015 through 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

74) Documentation to support that the Warden at USP Lee reviewed and disseminated After Action Summary Reports with Associate Wardens and Captains demonstrating any information and/or recommendations to enable local review of procedures and determination of what appropriate changes to procedures should be made for the years 2017-2020.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

75) Copies of all Unfair Labor Practices, local labor grievances, and minutes of all Office of Labor Management Relations meetings for the years 2015 through 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

76) Annual Training Plan and training committee meeting minutes and recommendations for the years 2015 through 2019.

- The government objects to this request. Silva has failed to make a *prima facie*

showing of materiality for this request.

77)     American Correctional Association report and certification for the years 2010 through 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

78)     Copy of USP Lee's local emergency plan for staff response to institutional emergencies.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the release of this information could jeopardize the safety of inmates and institutions within the BOP.

79)     Copies of all emergency drills conducted at USP Lee for the years 2015 through 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the release of this information could jeopardize the safety of inmates and institutions within the BOP.

80)     Please state: (a) the degree of understaffing, by percentage at USP Lee for the years 2017 through 2019, inclusive, (b) the degree of underfunding, by percentage, at USP Lee for the years of 2017 through 2019, inclusive.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

81)     The entire personnel files, including, without limitation, curriculum vitae/resumes, employment applications, reviews, complaints, and disciplinary actions for all

USP Lee staff assigned to the A Unit from January 1, 2018, through September 14, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. The government understands pursuant to *Giglio* that it must disclose impeachment information regarding any BOP witnesses that will be called at trial. The government intends on complying with that obligation.

82) Identification of all disciplinary action taken by BOP against any BOP employees for violation of BOP policies relating to the privacy and disclosure of inmate records and files from 2015 to 2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

83) All SIS investigation material related to the death of Abraham Aldana, including, but not limited to: separate inmate file/folder for Samuel Silva; crime scene photographs; crime scene sketches; crime scene video; crime scene administrative log; evidence photos; evidence recovery logs and receipts; Sentry quarters roster; staff duty roster; mass interview notes; investigator notes; Miranda rights forms; medical reports; victim and suspect photos for injuries; all witness statements in whatever form they exist; autopsy report; telephone search reports; copies of all subpoenas; Sentry workups on all inmates involved (for example, forms PP 44, PP 41, PCD, PPJ8, PPG0, PP10, and PP15); copies of incident reports; and copy of SIS Investigation Report, and After Action Report. (Portions of this request have been provided through discovery, but are incomplete.)

a. The government has provided in prior disclosures those materials that are required under Fed. R. Crim. P. 16 and understands its continuing obligation to do so. Otherwise, the government objects to this request. Silva has failed

to make a *prima facie* showing of materiality for this request.

84)     A population roster for every Unit at USP Lee on September 14, 2018, including documentation of empty cells.

     a.  The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

85)     A copy of all notices posted either on the electronic bulletin board, sent through e-mail, or physically posted for inmate review for the years 2017 and 2018.

     a.  The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

## B. DISCOVERY RELATED TO BOP PRISON SECURITY, STAFFING, AND INCIDENTS OF VIOLENCE

86)     Any personnel files, incident/disciplinary reports, or other files, electronic or any other format, regarding, but not limited to, Warden Michael Breckon and SIS Agent Baker.

- The government objects to this request. Silva has failed to make a prima facie showing of materiality for this request.

87)     From January 1, 2015, to the present, data on the frequency of 100-level misconduct and 200-level assaultive misconduct for each U.S. Penitentiary.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

88)     From January 1, 2015, to the present, data on the frequency of 100-level misconduct and 200-level assaultive misconduct aggregated for all U.S. Penitentiaries.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

89)     The BOP Performance Budget Congressional Submissions for fiscal years 2017-

2019.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

90)    A list of the number of Code 100 and Code 101 incidents at each United States Prison each year between January 1, 2015, to the present, both by raw number and by percentage of the inmate population.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

91)    The Correctional Services Significant Incident Data for incidents of assaults on inmates as raw numbers, as well as rates per 5,000 inmates for all United States Prisons for each year between January 1, 2015, to the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

92)    The number of homicides committed in USPs for each year between January 1, 2015, to the present, and the institutions where the homicides occurred.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

93)    The Federal Bureau of Prisons State of the Bureau Report for the years 2013-2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

94)    Copies of all Prison Social Climate Surveys for 2015 to the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

95)     All documents relating to reports of Code 101 violations within the BOP from January 1, 2013, to the present, including graphs, supporting data, and supporting documentation.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

96)     All documents relating to reports of Code 104 violations within the BOP from January 1, 2013, to the present, including graphs, supporting data, and supporting documentation.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

97)     All BOP After-Action Reports prepared from January 1, 2013, through the present.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

98)     All documents relating to the BOP's mission critical post initiative, including, without limitation, the following:

- A memorandum from the Assistant Director of Correctional Programs describing how each BOP facility was to gather information for 6 months regarding overtime and staffing under the mission critical post initiative;

- The information gathered in response to such memorandum; along with and supporting documentation;

- All documents reflecting the BOP's analysis of such information and/or evaluation of the effectiveness of the mission critical post initiative.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

99)     All documents relating to BOP or USP Lee policies, practices, guidelines, or

procedures for conducting mass interviews from 2013 to the present.

- The government will provide this information.

100) All documents reflecting BOP staff training regarding policies and procedures for supervising inmates in housing units during facility lockdowns prior to and including September 14, 2018.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

(3) Upon information and belief, for some time, inmate disciplinary data has been kept in a coded fashion that should be available to correctional officers manning posts in the BOP. This information is potentially valuable in the control of violence in an institution in general and for the control of weapons within an institution. For instance, among the various aspects of the Inmate Disciplinary Program (IDP), there exists a field designated as an "Additional Tracking Identifier, or "ATI." See IDP, Program Statement 5270.09, Appendix D, p.41. Following an incident for which an inmate is found responsible, a Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) must impute the nature of the offense into the SENTRY system via the Inmate Discipline Data report. The IDP expressly states, "It is critical that the data is reported correctly and uniformly." The ATI consists of three fields: 1) Type of Victim; 2) Type of Weapon Classification and 3) Nature of Injury Assessment. For the 'Type of Victim' Field, there are three (3) possible entries: "I = Inmate" "S = Staff" or "O = Other." For the 'Type of Weapon Classification,' there are thirteen (13) possible classifications:

A gun
B sharp object (used to inflict cutting injury)
C pointed object (used to inflict stabbing injury)
D solid\blunt object (thrown or used to hit)
E toxic or flammable fluids or substances
F fists\hands
G feet\legs

H bodily fluids\waste (spit, urine, feces, blood, etc.)
J teeth
K head
L  water
M other or unknown
N  N no weapon.

The IDP also provides a definition for the term "weapons" as follows: "Weapons refers to objects, instruments, or substances listed above that the inmate controlled at the time of the offense, and are considered an element of the offense." See IDP, Program Statement 5270.09, Appendix D, p.42. Finally, the 'Nature of Injury Assessment' Field has five (5) possible classifications: 1 – No Injury; 2 – Minor Injury; 3 – Moderate injury; 4 – Major Injury and 5 – Fatal Injury. Therefore, the defense requests the following:

    a.  The report of ATI data broken down by the fields described above for all United States Penitentiaries for the time period 2010 through 2018.

    b.  The specific report of report of ATI data broken down by the fields described above for USP Lee.

    c.  A list of any correctional officers disciplined with date, name of officer, and disciplinary measure taken in any USP for failing to take note of the ATI code and therefore failing to otherwise take action when required by any written mandate, Post Order, Program Statement, protocol, procedure, or otherwise accepted best practices.

    d.  A list of correctional officers disciplined with date, name of institution, name of officer, and disciplinary measure taken by any USP senior management for an officer failing to properly conduct a pat search, use a hand-held metal detector, and/or failing to force inmates to use walk through metal detectors.

    e.  A list of correctional officers disciplined with date, name of institution, name of officer, and disciplinary measure taken by any USP senior management for an officer failing to properly conduct a pat search, use a handheld metal detector, and/or failing to force inmates to use walk through metal detectors.

    f.  A list of correctional officers disciplined with date, name of institution, name of officer, and disciplinary measure taken by any USP senior management for an officer failing to protect inmates or a specific inmate from assault or for

failing to intercede to stop an ongoing assault.

g. A list of correctional officers disciplined with date, name of institution, name of officer, and disciplinary measure taken by any USP senior management for an officer failing to perform required security checks and/or rounds.

h. A list of correctional officers disciplined with date, name of institution, name of officer, and disciplinary measure taken by any USP senior management for an officer relating to allegations of BOP staff misconduct (intentional wrongdoing) at USP Lee from January 1, 2010 to the present.

- Without conceding this information exists, The government objects to this request.

  Silva has failed to make a *prima facie* showing of materiality for this request.

## C. DISCOVERY RELATED TO PRISON GANGS

As part of its intelligence gathering functions, the Bureau of Prisons keeps data and information on inmates who are members of a "prison gang," sometimes referred to by the BOP as a Security Threat Group (STG) or a Disruptive Group (DG), or a "management interest group." The following materials are requested:

101) Documents reflecting groups considered by BOP to constitute a prison gang, whether it be an STG, a DG, a "management interest group," or other BOP label.

- Without conceding that the scope of the information requested is material, especially as it relates to groups not involved in this case, the government will provide information in its possession detailing groups considered as STG, DG's, and management interest group.

102) Documents compiled from January 1, 2016, to the present, reflecting the number

of inmates who are considered to be members and/or affiliates of a prison gang, and the total number of inmates within the BOP who are considered members of a prison gang.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

103) Documents compiled for each of the years 2013 to present, reflecting the number, frequency rate, and/or prevalence rate of all 100- and 200-Level disciplinary infractions.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

104) Comparison data to reflect whether these infractions were committed by members of a prison gang or by inmates who were not members of a prison gang.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

105) In addition to the comparative frequency information requested above, please provide documents reflecting the number of inmates involved in committing these infractions (i.e. prevalence rates) so that the potential of a few inmates being responsible for many infractions can be identified.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

106) If BOP aggregates disciplinary misconduct associated with each prison gang, in comparison to non-gang member inmates, according to different parameters than level of infraction as set forth above, that information (including comparable statistics) is requested as well.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

107)   Documents reflecting the number of homicides in BOP for each of the last five years, reflecting date, facility, and perpetrator designation as a member of any prison gang (whether STG, DG, "management interest group," or other label) and the name of the specific gang.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

108)   From January 1, 2016, to the present, all policies, procedures, directives, or criteria used in institution placements or assignments by the Designation and Sentence Computation Center (DSCC) or other BOP institutional assignment entity for placement of alleged members of the Mexican Mafia (or EME), Sureños, Puente- 13, or SNM (Syndicato New Mexico).

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

109)   From January 1, 2016, to the present, all bulletins or "monitoring reports" or "trends" referring to the Mexican Mafia (or EME), Sureños, Puente-13, or SNM (Syndicato New Mexico) in the possession of the Martinsville, West Virginia BOP National Gang Unit office, the BOP Sacramento Intelligence Unit, or the National Gang Intelligence Center or Homeland Security.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.  Additionally, the release of this information could jeopardize the safety of inmates and institutions within the BOP.  Additionally, the fulfillment of this request would be overly burdensome.

**D.  DISCOVERY OF INFORMATION RELATING TO THE DECEDENT**.

110)    All reports, transcripts, or other documents in the possession, custody, or control of any government agency of any investigation regarding Abraham Aldana.

- The government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.  Additionally, the fulfillment of this request would be overly burdensome. Finally, Silva has failed to demonstrate these materials are in the possession of the government. *See Bryan*, 868 F.2d at 1036.

111)    All reports, transcripts, or other documents in the possession, custody, or control of any government agency referencing any suspected crime of violence, whether completed or not, wherein Abraham Aldana is mentioned.

- The government has provided Aldana's Central File in a prior disclosure which contains a copy of his most recent Pre-sentence Report.  Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.  Additionally, the fulfillment of this request would be overly burdensome and is overbroad. Finally, Silva has failed to demonstrate these materials are in the possession of the government. *See Bryan*, 868 F.2d at 1036.

112)    All information in the possession of any government agency connecting Abraham Aldana to any act of violence.

- The government has provided Aldana's Central File in a prior disclosure which contains a copy of his most recent Pre-sentence Report.  Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.  Additionally, the fulfillment of this request would be overly burdensome and is overbroad. Finally, Silva has failed to demonstrate

these materials are in the possession of the government. *See Bryan*, 868 F.2d at
1036.

113) All documents relating to the BOP's acceptance, designation, and classification,
and transportation of Abraham Aldana.

- This information has been provided in a prior disclosure in the form of Aldana's
  Central File.

114) All documents relating to any investigation, assessment, and/or treatment of
Abraham Aldana for mental health issues.

- Related to treatment and assessment by the BOP, this information has been
  provided in a prior disclosure to the defendant. Otherwise, the government objects
  to this request. Silva has failed to make a *prima facie* showing of materiality for
  this request. Additionally, the fulfillment of this request would be overly
  burdensome and is overbroad. Finally, Silva has failed to demonstrate these
  materials are in the possession of the government. *See Bryan*, 868 F.2d at 1036.

115) All Presentence Investigation Reports for Abraham Aldana.

- This information has been provided in a prior disclosure in the form of Aldana's
  Central File.

116) All Administrative Detention Orders referencing Abraham Aldana.

- This information has been provided in a prior disclosure in the form of Aldana's
  Central File.

117) All Disciplinary Segregation Orders referencing Abraham Aldana.

- This information has been provided in a prior disclosure in the form of Aldana's
  Central File.

118)     All photographs of Abraham Aldana within the possession, custody, or control of the U.S. government.

- The government will provide this information to the extent these materials are possessed by the BOP.  Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad. Finally, Silva has failed to demonstrate these materials are in the possession of the government.  *See Bryan*, 868 F.2d at 1036.

119)     All information obtained at any time by the Designation and Sentencing Computation Center (DSCC) or other BOP officials including SIS memorandum of interviews or debriefs that references inmate Abraham Aldana, and all pipeline information related to his transfers within the BOP, that is, any information sent to a receiving facility or any information given to transportation officers regarding classification or security issues for inmate Abraham Aldana.

- The information available in the BOP records was provided in a prior disclosure.

120)     Copies of all letters and emails to and from inmate Abraham Aldana that are in the possession of the BOP and all recordings of "jail calls" of inmate Abraham Aldana. (Some audio calls from 09/04/18-09/10/18 have been provided.)

- The government has provided the content of all jail calls in its possession in a prior disclosure.  The government will provide the result of TRULINCS and TRUFONE searches for Aldana, however these will not provide the content of emails or phone calls.  The government does not have the content of any emails of Aldana in its possession.

121)     A complete copy of inmate Abraham Aldana's BOP Central File (C-file); all BOP

documents alleging misconduct or disciplinary infractions; all BOP documents that detail Aldana's work and education history; all BOP documents that include medical or mental health treatment of Aldana.

- The government has provided this information in a prior disclosure.

122) Copies of the Board of Inquiry Report or Regional Inquiry Team (After Action Report) or Local Inquiry Team Report or any after action report and summary report conducted at USP Lee due to the May 2018 incident/assault on inmate Rudy Ball perpetrated by inmate Abraham Aldana. Also, the local response shall include the corrective action plan to the recommendations, all documents, records, video recordings, or working papers or personal records reviewed and created by members of the boards or teams, to include electronic material from 2005 to present.

- The government is not aware of any After Action Report conducted in regards to this incident. However, even if such report existed, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

123) Copy of the BOP Inmate Profile for inmate Abraham Aldana.

- This information has been provided in a prior disclosure.

124) All SIS investigation material related to the May 2018 assault by inmate Abraham Aldana upon inmate Rudy Ball including, but not limited to: separate inmate file/folder for inmates Aldana and Ball; crime scene photographs; crime scene sketches; crime scene video; crime scene administrative log; evidence photos; evidence recovery logs and receipts; Sentry quarters roster; staff duty roster; mass interview notes; investigator notes; Miranda rights forms; medical reports; victim and suspect photos for injuries; all witness statements in whatever form they exist; autopsy report; telephone search reports; copies of all subpoenas; Sentry work-ups on

all inmates involved (for example, forms PP 44, PP 41, PCD, PPJ8, PPG0, PP10, and PP15); copies of incident reports; and copy of SIS Investigation Report, Use of Force Reports, and After Action Report.

- To the extent these materials exist, the government will provide this information. Some of this information has already been provided in a prior disclosure.

125)   All information stored or maintained in the BOP intelligence (SIS) systems on Abraham Aldana at each Bureau of Prison facility and prison where he was incarcerated, both in formal files and informal/investigative files and any data bases: AIMS, TRUINTEL, card files, in written form or maintained electronically.

- The government has provided information related to Aldana that can be discovered through a diligent search of BOP records. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad.

**E. DISCOVERY REGARDING WITNESSES WORKING WITH THE GOVERNMENT OR PROVIDING INFORMATION TO THE GOVERNMENT.**

126)   The name, address, and date of birth of any cooperating witness (as noted in produced discovery by initials, specifically, but not limited to: E.S./M.S., P.R., J.L. R.P., G.A., T.M., S.M., N.H., I.O., J.G., R.M., F.Q., M.J.A., J.A., B.C., M.F., D.L., and A.Z.), as well as any other known or unknown witnesses that have, or will be, cooperating with the government.

- The government has provided redacted reports of interviews for individuals referenced by initials that have provided information to the government and will continue to provide redacted reports of interviews as it continues to receive information from individuals with knowledge of Silva's killing of Aldana.

However, at this time, the government only intends on calling as witnesses from the list above those individuals identified as R.P. and P.R. The government is aware of its obligations regarding disclosures pursuant to *Giglio*. At the appropriate time and when ordered by the court, the government will provide identifying information of these two individuals and its other witnesses who will testify at trial, however, at this time, the disclosure of said information would be premature and jeopardize the safety of these potential witnesses, especially based upon the history of attempted violence and intimidation against witnesses by defendant Silva. The government also specifically objects to the request that the government must provide dates of birth and address information for witnesses it intends to call at trial for the same reasons. As to the other individuals who will not be witnesses in this case, the government objects to the request based upon the fact Silva has failed to make a *prima facie* showing of materiality for this request and production is not required due to the informant privilege. *See Bell*, 901 F.3d at 466–67.

127) The case number and name of the prosecutions in which each cooperating witness has previously been used as a cooperating witness.

- The government has provided redacted reports of interviews for individuals referenced by initials that have provided information to the government and will continue to provide redacted reports of interviews as it continues to receive information from individuals with knowledge of Silva's killing of Aldana. The government is aware of its obligations regarding disclosures pursuant to *Giglio*. At the appropriate time and when ordered by the court, the government will provide such *Giglio* information related to those individuals who will actually be

witnesses at trial, however, at this time, the disclosure of said information would jeopardize the safety of these cooperators, especially based upon the history of violence against witnesses by defendant Silva. As to the other individuals who will not be witnesses in this case, the government objects to the request based upon failure to make a *prima facie* showing of materiality for this request and production is not required due to the informant privilege. *See Bell*, 901 F.3d at 466–67.

128) The case names and numbers of any trials or evidentiary hearings at which each cooperating witness has testified concerning: his or her own prior criminal activity; payments or rewards provided him by the federal or state government; efforts made to induce others to participate in criminal activity; or other purported law enforcement-related matters.

- The government has provided redacted reports of interviews and other interactions for individuals referenced by initials that have provided information to the government and will continue to provide redacted reports of interviews as it continues to receive information from individuals with knowledge of Silva's killing of Aldana. The government is aware of its obligations regarding disclosures pursuant to *Giglio.* At the appropriate time and when ordered by the court, the government will provide such information related to those individuals who will actually be witnesses at trial, however, at this time, the disclosure of said information would jeopardize the safety of these cooperators, especially based upon the history of violence against witnesses by defendant Silva. As to the other individuals who will not be witnesses in this case, the government objects to the request based upon the failure to make a *prima facie* showing of materiality for this request and production is not required due to the informant privilege. *See*

45

*Bell*, 901 F.3d at 466–67. Additionally, the fulfillment of this request as written would be overly burdensome and is overbroad. Finally, Silva has failed to demonstrate these materials are in the possession of the government. *See Bryan*, 868 F.2d at 1036.

129)    Any information, whether or not memorialized in a memorandum, agent's report or other writing, regarding promises or requests of immunity or leniency, preferential treatment or other inducements made to each cooperating witness, or to any family member, friend, or associate of each cooperating witness, in exchange for cooperation, including dismissal or reduction of charges, assisting in matters of sentencing or deportation, or promises regarding payments for expenses or testimony or eligibility for any award or reward.

- The government has provided redacted reports of interviews and interactions with individuals referenced by initials that have provided information to the government and will continue to provide redacted reports of interviews as it continues to receive information from individuals with knowledge of Silva's killing of Aldana. The government is aware of its obligations regarding disclosures pursuant to *Giglio.* At the appropriate time and when ordered by the court, the government will provide such information related to those individuals who will actually be witnesses at trial, however, at this time, the disclosure of said information would jeopardize the safety of these cooperators, especially based upon the history of violence against witnesses by defendant Silva. As to the other individuals who will not be witnesses in this case, the government objects to the request based upon the failure to make a *prima facie* showing of materiality for this request and production is not required due to the informant privilege. *See Bell*, 901 F.3d at 466–67.

130) Any statement made or information or document provided by a prospective government cooperating witness that conflicts in part or in whole with: (1) the statement of another prospective witness; (2) a prior statement made by the same government cooperating witness; or (3) any other documents or witness.

- The government has provided redacted and unredacted reports of interviews for individuals that have provided information to the government and will continue to provide redacted reports of interviews as it continues to receive information from individuals with knowledge of Silva's killing of Aldana. The government is aware of its obligations regarding disclosures pursuant to *Giglio* as it applies to individuals who will be witnesses at trial, and *Brady*, and it will comply with those obligations.

131) Any report, document, or information which details the criminal activities of the cooperating witness which were undertaken by said witness with or without the authority or approval of the federal or any state government, but for which the federal government or any state government has elected, formally or informally, not to prosecute.

- The government is aware of its obligations regarding disclosures pursuant to *Giglio* for individuals it intends on calling as witnesses at trial. At the appropriate time and when ordered by the court, the government will provide such information related to those individuals that is in the possession of the government. As to the other individuals who will not be witnesses in this case, the government objects to the request based upon the failure to make a *prima facie* showing of materiality for this request and production is not required due to the informant privilege. *See Bell*, 901 F.3d at 466–67.

132) All records available to federal or state government agencies reflecting the arrest,

conviction, and investigative history of any cooperating witness.

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad. Finally, the government objects to this request as to non-testifying individuals based upon the informant privilege. *See Bell*, 901 F.3d at 466–67.

133) Information concerning misconduct by any cooperating witness, including misconduct that reflects on the lack of candor, truthfulness, or law-abiding character of the cooperating witness, such as uncharged criminal conduct or fraud.

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad.

134) All information, records, and transcripts which in any way indicate or reveal that any cooperating witness, or any other prospective witness has provided untruthful false, misleading, incomplete, or inaccurate information or testimony, in connection with this or any other case, to any federal or state law enforcement officer or agency, grand jury, or federal or state trial court.

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima*

*facie* showing of materiality for this request.

135) If given a polygraph examination, the results of the examination performed on any potential witness as well as any information concerning the unwillingness of any potential witness to submit to a polygraph examination.

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request.

136) All recordings of telephone calls made by any known government witness (whether or not the witness has been identified as a government informant) from September 1, 2018, to the present. (Some calls from inmate "ES" have been provided.)

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad.

137) All copies of correspondence, including emails received or sent by any known government witness (whether or not the witness has been identified as a government informant) from September 1, 2018, to the present.

- The government understands its obligations pursuant to *Giglio* as it applies to witnesses it intends to call at trial and will comply with said obligations. Otherwise, the government objects to this request. Silva has failed to make a *prima facie* showing of materiality for this request. Additionally, the fulfillment of this request would be overly burdensome and is overbroad. Finally, the government

objects to this request as to non-testifying individuals based upon the informant privilege. *See Bell*, 901 F.3d at 466–67.

For the reasons stated, the government asks this court to grant in part and deny in part the defendant's Amended First Motion for Discovery (Doc. 154).

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

/s/ Zachary T. Lee
Zachary T. Lee, VSB 47087
Assistant United States Attorney
Western District of Virginia
180 West Main Street
Abingdon, Virginia 24210
(276) 628-4161
(276) 628-7399 (Fax)
USAVAW.ECFAbingdon@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, July 08, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for defendant.

/s/ Zachary T. Lee
Assistant United States Attorney